*Twenty-third Judicial District.*

## In the Orphans' Court of the County of Berks.

## IN THE MATTER OF THE ESTATE OF JACOB SCHEIDT, DECD.

Where the account of an executor was resettled by an auditor with the consent of all persons interested, it is too late for an executor, having taken the chances of a result in his favor, afterwards to object that the auditor took cognizance of matters not excepted to in accordance with the prevailing usage of auditors before the rule relative to the same was revised.

A sale of real estate for distribution under directions in a will of the testator, will convert the proceeds into personal property.

When personal property is given generally to a legatee without words of qualification embodied in the very terms of the gift, the legatee is entitled to take it absolutely, although there is a bequest over upon failure of issue in a subsequent part of the will. But when the gift is to the legatee expressly for life with a bequest over, a life interest only passes, and in a distribution the fund can be paid over only upon security given to protect the rights of ulterior legatees.

The Orphans' Court has power to surcharge the account of an executor where the sale has been unfair or made in bad faith, where it has not been made for the highest and best price that could be obtained by proper and reasonable efforts, where there has been fraud, connivance, supine negligence or wilful default, and generally where a wrong has been wilfully done or a duty wilfully neglected.

There is no unbending rule as to trustees' commissions, generally 2½ per cent. on realty, and 5 per cent. on other amounts, are held to be adequate, depending upon the trouble incurred.

**Exceptions to report of auditor on the account of Henry Scheidt, executor.**

Opinion of the Court by

WOODWARD, J.  The first point presented by this record is raised by the exception filed on behalf of the executor, that "the auditor erred in taking cognizance of anything not excepted to in the account." The appointment of Mr. Shrœder was made in this case under a practice which had prevailed in this county for many years, of referring the accounts of executors and administrators to auditors for re-statement and re-settlement as well as for distribution, upon the mere motion of any party in interest. It was not until the summer of 1868 that this practice was changed, after the attention of the Court had been distinctly called to what was found to have been a uniform disregard of the provisions of the acts of Assembly relating to the subject.  And the new practice which the law had prescribed did not become settled until after the adoption of the revised rules of Court in December, 1868.  Mr. Shrœder was appointed on the

twenty-third of May, 1868, and without objection on either side, the parties appeared before him and the account of the executor was re-settled in accordance with the usage which had so long prevailed.   The executor presented his case without a protest, and took his chances of the result. He waived his right to object afterwards, and it is too late now when the report has proved unsatisfactory, to fall back upon the rule of the statute which, by the common consent of the bar, had been set aside for years. The utmost he would be entitled at this time to ask, would be that Mrs. Laub should be required to file exceptions to the account raising the questions on which the auditor passed *nunc pro tunc*.

2d.  The disposition of the auditor of the fund in the executors' hands as personalty was accurate, the directions of the testator for the sale of the real estate and the distribution of the proceeds were explicit and imperative, and worked its conversion into a personal fund.   Stoner v. Zimmerman, 9 Harris 394; Heberton's estate, 3 Phila. R. 436.

3d.  It is objected in the next place that the auditor erred in giving to Mrs. Laub her distributive share as her absolute property.   The testator after directing the sale of his real estate, bequeaths the proceeds in these words : "And the money arising out of the proceeds of the sale, I give, devise and bequeath unto my five children, Joseph, Benneville, Henry, and to my daughter Esther, the wife of Charles Delb, and Eliza, the wife of James Laub, share and share alike."   A later provision of the will was in the following terms : "And I do order and direct that in case my daughter Eliza should die without any issue, then her share shall be refunded to my other children, share and share alike as before mentioned, but in case she shall leave any issue it shall go to her children first after her death in equal shares."   These provisions it is clear would create an estate tail in a devise of land, and the rule is definite that words capable of creating an estate tail give an absolute and not a qualified interest in personal property.   While these principles are unquestionable, there is some embarrassment always involved in deciding upon their application, in view of the current of Pennsylvania decisions.

In the argument of the counsel for the executor, the distinction between cases where the bequest was absolute and those where it was for life, was assumed to rest upon the fact whether at the time of the testator's death the legatee had or had not children.   This distinction as a controlling consideration is not found to have been made in any decided case. The true rule for distinguishing the two classes of bequests is believed to be this : Where personal property is given generally to a legatee without words of qualification embodied in the very terms of the gift, the legatee is entitled to take it absolutely, although there is a bequest over upon failure of issue in a subsequent part of the will.   But where the gift is to the legatee expressly for life, with a bequest over, a life interest only passes,

and in a distribution the fund can be paid over only upon security given to protect the rights of the ulterior legatees. The whole law upon this subject is illustrated in Amelia Smith's appeal, 11 Harris 9, and Mengel's appeal, 11 P. F. S. 248, in which the legacies were held to be absolute; and in Emma Myers' appeal, 13 Wright 111, and Sheets' estate, 2 P. F. S. 257, in which life interests only were taken by the legatees. The facts in Mengel's appeal so far as this point was involved, were identical with those presented here. The auditor properly held Mrs. Laub's title to be absolute.

4th. The auditor surcharged the executor for $78 for deficiency in the price of wood-land sold to Daniel S. Kutz, he has found that this property was sold for less than its value; that in anticipation of the sale there was some understanding as to its result between the executor and other members of the family, if not between him and outside parties; that Mrs. Laub did not participate in this understanding, and that the executor was actually interested in the purchase by Kutz. On this question of surcharge, no authority has been furnished by either party to the Court. In view of the facts on which the decision of the auditor has been founded, it is probable that upon an application made at the proper time, the sale of the wood-land would have been set aside. By refusing to take any part of the fund for distribution, the heirs could perhaps still treat the title as vested in the estate, or they might perhaps have an ulterior remedy against the executor. But the adoption of any one of the theories suggested by the executor's counsel would lead to embarrassment and delay, as well as to an expense entirely disproportioned to the extent of the wrong to be redressed; that the Orphans' Court has the power to make such a surcharge as this is in a proper case, where "the sale has been unfair or made in bad faith," "where it has not been made for the highest and best price that could be obtained by proper and reasonable effort," "where there has been fraud or connivance," "where there has been supine negligence or wilful default," and generally where a wrong has been wilfully done or a duty wilfully neglected, would appear to be clearly established by the course of authority in Pennsylvania. Appeals of Elliot and Clay, 14 Wright 75; Springer's estate, 1 P. F. Smith 342; Hughes' Minors' appeal, 3 P. F. Smith 500. The surcharge of $78 must be allowed to stand.

5th. There are no facts disclosed by the auditor's report to warrant the Court in re-adjusting the allowance for executors commissions and fees of counsel. It was true the executor was found chargeable with $78 on the sale of wood-land. All that is to be said in regard to it is, that that charge remains. There were other subjects of dispute before the auditor. One of them a claim against the estate of some significance, which the event proved it was the executor's duty to resist. It is for this reason that such cases as Swartswalter's estate, 4 Watts 78, McCahan's appeal,

7 Barr 56, and Hehmen's appeal, 5 Barr 413, are not applicable here. There is no unbending rule by which the amount of a trustee's commission is fixed.   Generally 2½ per cent. on the proceeds of realty, and five per cent. on other amounts, are 'held to be adequate.   Wistar's appeal, 4 P. F. S. 60.   But it was held in Robb's appeal and Harper's appeal, 5 Wright 45, that ordinarily three per cent. is a sufficient compensation for the sale of real estate, but five per cent. is allowed where extra trouble has been incurred.   In Snyder's appeal, 4 P. F. S. 67, three per cent. on the proceeds of realty was allowed, and in that case Judge Agnew said the finding of the auditor would only be disturbed upon affirmative evidence of plain error.

6th.  The remaining question has relation to the charge made against the executor of the two items of interest of $108.75 and $314.02 respectively.   To the extent to which Mrs. Laub's share of the $522, produced by the sale of the wood-land, made up her share in the final distribution ; the charge of the first item of $108.75 was a manifest error.  Interest was given to her on her distributive share of $1480.52⅖ from the 8th of April, 1868, to the 21st of October, 1871, while in stating the general account, interest had already been charged on the $522 paid by Kutz for the very same period.   It would be impossible with even an approximation to accuracy to ascertain the exact amount of this erroneously allowed item that should be stricken out.   And it is not necessary that the attempt should be made.   In the first place it is not understood that interest has been claimed by any other of the heirs than Mrs. Laub.   And the Court see in none of the facts reported by the auditor a ground for charging the executor with interest in the general account.   Indeed there would be difficulty in sustaining the allowance made to Mrs. Laub in the distribution, except upon the admission by the executor's counsel in his argument that there was an agreement to that effect.   Mrs. Laub receives her interest on her share of the $522 in the allowance of the interest on her distributive share, and as to the other heirs, there is nothing to warrant the addition of interest to the wood-land fund, that would not warrant the addition of interest to the general fund in the executor's hands.

It is decreed that the item of. $108.75, interest allowed by the auditor on $522 paid to the executor by Daniel S. Kutz, be stricken out as a charge against the executor ; that the distribution be corrected by the Clerk of the Orphans' Court in accordance with this decree, and that thereupon the report be confirmed.

*F. Leaf Smith*, for Mrs. Eliza Laub ; *H. H. Swartz*, for executor.