## Harris et al., Appellants, *v.* Silvis.

*Trusts and Trustees—Duties of trustees—Buying in trust property —Breach of trust—Commissions.*

Where a trustee fails to account properly and fully with respect to his administration of a trust, and commits other breaches in connection therewith, he forfeits all right to commissions, which are payable only to a faithful trustee.

It is the duty of a trustee to keep the cestuis que trustent fully informed of his actions under the trust agreement, to account to them whenever requested, and on the completion of his duties to give them a full, complete and detailed statement or account of his operations without any request or demand for the same.

He should set forth the dates when he sold the several properties deeded to him as trustee, to whom they were sold, the money received by him, upon what account received, and when, and the disposition made by him of the funds, showing the date when each payment was made, the payee, the purpose of the payment and the amount, accompanied by vouchers or evidences of payment if requested.

The utmost good faith is required of a trustee, and if he buys part of a trust estate, even at a public sale, which is brought about or controlled by himself, he will be presumed to buy and hold it for the benefit of the trust.

Argued April 23, 1925. Appeal No. 107, April T., 1925, by plaintiffs from order and decree of C. P. Westmoreland County, No. 1090 Equity Docket, in the case of Jacob Harris and Morris Harris, and Bennie Feldman, Administrator of the Estate of Adam Jacobs, deceased, *v.* Z. T. Silvis. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Reversed.

Bill in equity for an accounting. Before COPELAND, P. J.

The facts are stated in the opinion of the Superior Court.

The case was submitted to a referee, who, in his report, directed the reconveyance by the defendant to the plaintiffs of certain real estate, (forming part of the trust property conveyed by plaintiffs to defendant), part of which the defendant had purchased at sheriff's

sale on an execution issued by him, and the rest, through straw men; and surcharged him with certain moneys received by him and not accounted for, as well as commissions on the real estate conveyed to himself.

On exceptions to the report of the Referee the court sustained the exceptions filed by the defendant to the order of reconveyance as above, and dismissed those filed by the plaintiffs; and entered a decree accordingly. Plaintiffs appealed.

*Error assigned,* among others, was the decree of the Court.

*A. E. Jones,* and with him *S. A. Kline, Wade T. Kline* and *Elias Goodstein,* for appellants.—If a trustee becomes the purchaser of property at public sale, brought about in any manner, controlled by him, he will be presumed to buy and hold for the benefit of the trust: McDougal, et al., v. Citizens National Bank, 265 Pa. 170; Calvert v. Woods, 246 Pa. 325.

A trust *ex maleficio* arises only by some act on the part of a wrong doer, before and at the time he acquired title to the real estate in question: Jourdan v. Andrews, 258 Pa. 347; Turney v. McKown, 242 Pa. 565; Seif v. Muse, 70 Pa. Superior Ct. 488; Justice v. Watkins, 276 Pa. 138.

*Charles C. Crowell,* and with him *J. R. Silvis,* for appellee.—The findings of fact by a court are entitled to the same weight as the verdict of a jury. If there is credible evidence upon which such findings may rest, they will be sustained: Ahl v. Ahl, 186 Pa. 99; Riverton Ferry Co. v. McKeesport & Duquesne Bridge Co., 1 Pa. Superior Ct. 587; Brotherton Bros. and F. E. Dewey v. Reynolds, 164 Pa. 134; Gundaker v. Ehrgott, 209 Pa. 284; Cowles v. Mayer, 272 Pa. 323.

OPINION BY KELLER, J., July 9, 1925:

In the fall of 1912, the plaintiffs were partners in the bakery business at Monessen, Westmoreland County, and Arnold City, Fayette County, and were in financial difficulties. Their personal property had been sold by the sheriff. Their real estate was heavily encumbered, and an involuntary petition in bankruptcy had been filed against them. With affairs in this condition, on October 18, 1912, they entered into an agreement with the defendant, an attorney-at-law, by the terms of which they employed him to endeavor to make a composition with their common or unsecured creditors on a basis not in excess of fifty cents on the dollar, and agreed to turn over to him as trustee all their real estate, and any personal property yet possessed by them; he to sell the real estate at public or private sale (and receive the rents until sold), and use the proceeds in effecting a composition and settlement with their creditors. The agreement provided that out of the fund realized from the sale of the property and the closing of the partnership estate he was to be paid his expenses and a reasonable attorney's fee and commission—which attorney's fee and commission, however, were not to exceed ten per cent.

In order to raise the funds necessary to effect the proposed composition, the Bank of Charleroi in November, 1912, took plaintiffs' note for $1,500, secured by mortgage on some land in Mercer County, the net proceeds paid the defendant being $1,455; and with this money he effected a settlement with the common creditors, whose claims amounted to $3,524.20, for $1,146.07, and $300 was paid the receiver in bankruptcy to cover the necessary costs and expenses of that proceeding. The evidence does not show when the payments to the creditors were actually made. Deeds were executed by the plaintiffs to defendant for real estate in Westmoreland County, Fayette County and Mercer County and he proceeded to dispose of the same under the trust agreement.

On September 12, 1921, the plaintiffs averring that the defendant had never accounted to them as such trustee, notwithstanding frequent requests for an accounting, and that they had recently learned of certain fraudulent acts done by him in connection with said trust estate which constituted a betrayal of the trust reposed in him as aforesaid, filed this bill for an account and equitable relief.

It was, of course, the duty of the defendant as trustee to keep the plaintiffs fully informed of his actions under the trust agreement, to account to them whenever requested, and on the completion of his duties to give them a full, complete and detailed statement or account of his operations without any request or demand for the same. Defendant, an attorney, well knew this and the form of an account to which plaintiffs were entitled. They were entitled to know the dates when he had sold the several properties deeded to him as trustee, to whom sold, the money received by him, on what account received, and when, and the disposition made by him of the fund, showing the date when each payment was made, the payee, the purpose of the payment and the amount, accompanied by vouchers or evidences of payment if requested.

Defendant averred and testified that he had furnished plaintiffs statements of account from time to time, but he presented in evidence no form or copy of any such account, and we agree with the referee that the evidence fails to sustain his contention that he rendered them any adequate account. The account presented with his answer is, as to the debit side, a mere travesty. Except for the $1,455 received from the Charleroi Bank and $100 received from Max Wolf, it does not contain a date. It does not mention to whom any of the properties were sold or from whom moneys were received. It lumps, without any dates or names, the rents received from the Pricedale property—which, by the way, were admitted to be $25.10

short of the amount actually received,—and from the Farrell property, and it is impossible to learn from the account what moneys were in the hands of the trustee at any given date. This was important for the defendant claimed to have advanced the trust estate $300 from his own funds at one time and $236.61 at another and charged the plaintiffs with interest on these amounts for thirteen months and twenty-one and one-half months respectively. He took credit for the repayment to himself of this $300 on October 1, 1913, but did not charge himself with its receipt, and insisted even on the trial that he was justified in doing so. If he had made advancements a few more times on the same theory he would have absorbed the entire estate.

Early in his administration of the trust,—(the exact date nowhere appears)—defendant sold what is known as the Keister property to one Max Wolf for $250 cash, and the assumption of certain liens amounting to about $4,950. None of these liens were paid to or discharged by defendant, except one (Weinberger judgment) for $250 and as to that he followed the same course adopted as to the $300 advancement—he took credit for its payment but failed to charge himself with its receipt. On this transaction the entire fund passing through his hands was $500, on which under the terms of the agreement his fees and commission were limited to a maximum of $50, yet he took credit in the account filed by him for $520, ten per cent of the cost to the purchaser, as to $4,700 of which he had not handled a cent. His excessive charge of $470 resulted in his leaving the estate $270 the poorer by making the sale.

Before entering into the trust agreement plaintiff had agreed to sell certain real estate not conveyed to defendant to one Rosenbloom. Subsequently, defendant as plaintiffs' attorney, assisted in putting through the deal, and charged $75 in the account for his services in connection therewith. A judgment for $255.27, held by East Side Land Company, No. 161, November

Term, 1912, (Westmoreland Co.), was a lien on the property to be conveyed and it was necessary to secure its release or satisfaction. Plaintiffs were unable to raise the money, so defendant out of his own funds, bought the judgment and took an assignment of it. Later,—but exactly when does not appear,—defendant issued execution on this judgment and sold thereunder three and one-half lots in Hempfield Township and two lots in Pricedale, all of which had been conveyed to him by plaintiffs as a part of the trust estate. The Pricedale lots were sold by the sheriff to a third party for "about $150," [defendant's testimony], but defendant bought the Hempfield Township lots for $1, and still retains title and claims ownership. Defendant testified that plaintiffs knew of this sheriff's sale; but his evidence is indefinite and unsatisfactory. Called in his own behalf he testified in chief: "Q. Did you notify the plaintiffs that this property was advertised for sheriff's sale? A. They knew it; they were notified; I told them in the office. Q. Did they or any of them attend the sale of that property? A. They did not." Not one of defendant's numerous letters to the plaintiffs gives any intimation of his intention to issue execution on the judgment or any notice of the impending sheriff's sale. He does write them of his purchase of the judgment and its transfer to him. Plaintiffs, on the other hand, deny any notice or knowledge of the sheriff's sale or of his purchase of the lots and claim of individual ownership, until a short time before filing the bill. In such circumstances the utmost good faith is required of a trustee, and if he buys the trust property even at a public sale, which is brought about or in any way controlled by himself, he will be presumed to buy and hold for the benefit of the trust: Kenworthy v. Equitable Trust Co., 218 Pa. 286, 291; Church v. Winton, 196 Pa. 107; Michoud v. Girod, 4 Howard (U. S.) 503. The cases relied upon by the defendant and the court below, (Fisk v. Sarber, 6 W. &

S. 18; Lusk's App., 108 Pa. 152; Bruner v. Finley, 187
Pa. 389), are easily distinguishable, by reason of the
fact that in none of them did the trustee control or
bring about the sale; here the defendant issued and
controlled the execution. The distinction is recognized
in McDougall v. Citizens Nat. Bk., 265 Pa. 170, 173, and
Calvert v. Woods, 246 Pa. 325, 328. We agree with the
referee that in the circumstances here present the de-
fendant holds these three and one-half lots in Hemp-
field Township as trustee for the plaintiffs; at the op-
tion however, of the plaintiffs, provided they so elect
within a reasonable time: Church v. Winton, supra.
In calculating the cost of the lots to the defendant,
credit must be given on the judgment for the net
amount realized on the execution from the Pricedale
lots, sold under the same writ; and allowance made
defendant for interest, and taxes, etc., paid by him,
less any receipts of money therefrom by him.

The defendant conveyed to himself,—through straw
men,—a tract in Arnold City, the building on which
was destroyed by fire during his trusteeship, and
charged himself with $600 as the consideration; and
three lots (Nos. 47, 133 and 182) in the Borough of
Farrell for $200. He took credit in his account for $80
commission on these sales. He admitted that the
grantees, Robbins and Levy, respectively, paid him
nothing and that he had an understanding with each of
them, when the conveyance was made, that the prop-
erty was to be reconveyed to him; and that he still
holds title and claims ownership. The court below
found that these properties were purchased by defend-
ant with the knowledge and consent and at the direc-
tion and solicitation of the plaintiffs; but there is no
evidence to support the finding. The defendant does
not so testify. The utmost length he was willing to go
was that he consulted with the plaintiffs with regard to
these properties and they were anxious to have them
disposed of. No doubt, they were. He nowhere testi-
fies that he or they suggested that he should buy them

or that they agreed he should have them at the prices accounted for; and plaintiffs deny it in toto. While there seemed to be no ready sale for the lots, there had been no attempt to dispose of them by public sale; and in any event this did not warrant the defendant in selling them to himself, through the medium of a straw man. Again we agree with the referee, who held that plaintiffs were entitled to a reconveyance on proper reimbursement to defendant. Plaintiffs have the option of confirming the sales, or either of them, or of requiring a reconveyance upon payment to defendant of the net cost of the properties, including interest thereon from the date the money was or is actually paid by defendant, (as distinguished from merely entered in his account), and taxes and municipal claims paid by him, less any moneys received therefrom by him.

We find no breach of trust, fraud or misconduct with respect to defendant's sale of the improved property in Farrell to Frankovitch for $2,750, or the sheriff's sale of improved property in Pricedale on the judgment of the Motz Lumber Co., such as to require a surcharge of the defendant with any money over and above the amounts for which they were sold. But in our opinion his conduct of the trust, as a whole,—his neglect to account properly and fully with respect to his administration of the trust, his failure to charge himself in his account with $250 received, and deposited in bank, on account of the Weinberger judgment, his taking credit for $300 advancement without a corresponding charge for the money, his exorbitant claim for commission on the Keister property, and his breaches of trust with respect to the Hempfield Township, Pricedale and Farrell lots—is such as to forfeit all right to commissions, which are payable only to a faithful trustee: Hart's Est. (No. 4), 203 Pa. 496; Hanna v. Clark, 204 Pa. 145; Fellows v. Loomis (No. 2), 204 Pa. 227; Swartswalter's Acct., 4 Watts 77; Steh-

man's App., 5 Pa. 413; Correll, Receiver's Acct., 283 Pa. 277.

As restated, then, the account would stand:

| | | |
|---|---|---|
| Debits admitted by defendant .............. | | $6,057.90 |
| Add error in rents ....................... | | 25.10 |
| Received from Wolf to pay on Weinberger judgment .......................... | | 250.00 |
| | | $6,333.00 |

| | | | |
|---|---|---|---|
| Credits claimed by defendant ............ | | $6,774.74 | |
| Deduct credit for advancement ......... | $300.00 | | |
| Deduct commissions— | | | |
| Keister ............ | 520.00 | | |
| Farrell dwelling .... | 275.00 | | |
| Farrell lots ........ | 20.00 | | |
| Arnold City tract ... | 60.00 | | |
| Rents ............ | 76.61 | 1,251.61 | 5,523.13 |

Balance due plaintiffs with interest from
March 1, 1915, ........................    $809.87

All of the assignments of error but the seventh are sustained in whole or in part, the decree is reversed and judgment is hereby entered in favor of the plaintiffs and against the defendant for $809.87, with interest from March 1, 1915; and it is further ordered and decreed that the plaintiffs elect by writing filed within four months from date whether to confirm or avoid the conveyance to defendant, individually, of (1) the three and one-half lots in Hempfield Township, Westmoreland County, (Nos. 317, 318, 319 and 320), (2) the three lots in Farrell Borough (Nos. 47, 133 and 182) and (3) the tract of land in Arnold City, hereinbefore referred to; and tender and pay to defendant the net cost (to be determined as directed in this opinion), of such of said properties as plaintiffs elect defendant to hold as their trustee; and upon such pay-

ment the said defendant shall convey to plaintiffs by good and sufficient deed or deeds in fee simple, with covenant of special warranty, free of encumbrances, the premises so elected to be held in trust for them as aforesaid. If such election and tender be not made by plaintiffs within said period of four months, the title of the defendant to said real estate or to such thereof as no election and tender is made is confirmed in defendant.

Costs in the court below and this court to be paid by appellee.